## EDWARD WOOTTON *vs.* HULDAH A. WHITE.

*Right of Purchaser at Mortgage Sale to Growing Crops.*

When crops are planted on land which is subject to a mortgage, a purchaser of the land at a foreclosure sale before actual physical severance and gathering of the crops, is entitled to the same as against a third party to whom the mortgagor had previously executed a bill of sale of the crops as well as against the mortgagor.

Appeal from a judgment of the Circuit Court for Montgomery County (HENDERSON, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and BOND, JJ.

*Thomas Anderson* (with whom was *W. Viers Bouic, Jr.*, on the brief), for the appellant.

*Talbott & Talbott*, for the appellee, submitted the cause on their brief.

McSHERRY, C. J., delivered the opinion of the Court.

The question presented by this appeal is a simple one, though it has been decided in opposite ways in other jurisdictions. It must now be definitely settled in Maryland. It arose in this way : In 1892, Thomas H. White and wife conveyed by way of mortgage to James C. Holland their equity of redemption in a tract of land lying in Montgomery County, and by the same mortgage the fee in another and adjoining tract to secure the payment to Holland of an indebtedness which they owed to him. Subsequently, the appellee, Huldah A. White, recovered a judgment against the mortgagor, White, for some sixteen hundred dollars, and this judgment was a lien on the mortgaged property, but was subordinate to the lien of the mortgage. In the fall of eighteen hundred and ninety-six, Thomas H. White, the mortgagor, seeded a crop of wheat on both parcels of the mortgaged lands. He purchased from the appellant, Dr. Wootton, the fertilizer used in planting that crop, and in February following, when the mortgage was overdue, he executed and delivered to the appellant a bill of sale of the growing crop in consideration of the sum due for the fertilizer. On May the thirty-first, eighteen hundred and ninety-seven, the attorney named in the mortgage sold the mortgaged premises, with the growing crop of wheat thereon, under the power contained in the mortgage, at public sale, to the appellee, for a price below the aggregate of the liens which were prior to the appellee's judgment, and the appellee realized nothing on her judgment. The mortgage sale was ratified by the Circuit Court on June the twenty-ninth, before the wheat was cut and severed from the land. After the mortgage sale the appellant claimed, under his

bill of sale, the wheat crop ; but the appellee, the purchaser of the mortgaged premises, garnered the crop. Thereafter, the appellant brought this suit in trover against the appellee to recover the value of the wheat and straw. Judgment was entered in favor of the appellee and the appellant has appealed. The question is : Did the appellant acquire under the bill of sale a title to the growing crop—a title which was paramount to that of the mortgagee, and therefore superior to any right which the purchaser at the mortgage sale took by virtue of that purchase ?

If the title which the bill of sale gave to the appellant was subordinate to the lien of the mortgage, then obviously the judgment denying the appellant's right to recover the value of the wheat from the purchaser of the mortgaged premises was correct, as there is no pretence that the crop was excepted or reserved from the mortgage sale. If, on the other hand, the bill of sale gave to the appellant a title superior to the lien of the mortgage, it must have been because, either the lien of the mortgage did not attach to any crops planted *after* the execution and delivery of the mortgage ; or because, the execution and delivery of the bill of sale operated at law and in equity, as a severance of the actually growing crops, converted them into detached personal property and thereby exempted or subtracted them from the lien which attached when they were planted and annexed to the freehold. There is no other alternative. The first has not been and could not be contended for, because, though for some purposes, growing crops are treated as personal property, and therefore are not within the fourth section of the statute of frauds, they none the less partake of the nature of the realty, and under a conveyance pass with the soil to which they are united, unless expressly reserved. *Combs* v. *Jordan*, 3 Bland, 303 ; 8 *Am. & Eng. Ency. L.* (2nd ed.) 303–4. The general rule of the common law is that growing crops form a part of the real estate to which they are attached and from which they draw nourishment, and, unless there has been a severance of them from the land, they follow the title thereto.

There was no actual severance of this growing wheat until after the ratification and confirmation of the mortgage sale, and it comes to the question whether the execution and delivery of the bill of sale in February, eighteen hundred and ninety-seven, operated as a constructive severance of the crop that did not mature until the summer of that year, and whether by force of that bill of sale, the crop, which unquestionably, but for the bill of sale would have passed to the purchaser of the soil at the mortgage sale, was excluded from the lien of the mortgage and was vested in the appellant.   We have just said that the growing crop would unquestionably have passed to the purchaser at the mortgage sale had there been no bill of sale.   This is incontestably the law.   " The purchaser is entitled to the crops growing at the time of the sale to him, in preference to the mortgagor or any one claiming under him whose claim originated subsequently to the mortgage."   2 *Jones on Mortg.*, sec. 1658. The author cites the following cases: *Shepard* v. *Philbrick*, 2 Den. 174 ; *Jones* v. *Thomas*, 8 Blackf. 428 ; *Lane* v. *King*, 8 Wend. 584 ; *Batterman* v. *Albright*, 122 N. Y. 484 ; *Crews* v. *Pendleton*, 1 Leigh (Va.) 297 ; *Parker* v. *Starts*, 15 Ohio St. 351 ; *Anderson* v. *Strause*, 98 Ill. 485; *Ranklin* v. *Kinsey*, 7 Bradw. 215; *Scriven* v. *Moote*, 36 Mich. 64 ; *Calvin* v. *Shimer*, 15 Atl. R. 255; *Beckman* v. *Sikes*, 35 Kan. 120; *Percy* v. *Chase*, 79 Me. 519; *Montgomery* v. *Mercell*, 65 Cal. 432 ; *Kerr* v. *Hill*, 27 W. Va. 576 ; *Haydon* v. *Burkemper*, 101 Mo. 644; *Downard* v. *Graff*, 40 Iowa, 597 ; *Sherman* v. *Willett*, 42 N. Y. 146.

It is true that there are cases in some of the other States which hold that the execution of a bill of sale, under the circumstances set forth in this record, works a severance of growing crops ; but they are founded either upon some statutory provision, or upon a view of the relation between mortgagor and mortgagee, which does not obtain in Maryland. It must not be forgotten that we are not dealing now with the rights which the personal representative of a deceased owner of land has to the crops maturing after the

death of the owner; nor with the right of a creditor to seize and sell growing crops; nor with the power of the owner of such crops to sell them by parol when there is no mortgage binding them. These are all aside of the question before us; and that question, to repeat it by way of emphasis, is, can a mortagor, who has planted crops that have become subject to the lien of a prior mortgage on the land, constructively sever that crop before it matures or ripens by merely executing and delivering a bill of sale of the uncut crop to a third party, so as to defeat the mortgagee's or the purchaser's right to claim the crop after he has purchased the land at a foreclosure sale made before the actual physical severance of the crop?

The doctrine is definitely settled in Maryland that the mortagor while in possession and before forclosure is regarded as the real owner of the property *except as against the mortagee.* Though in dealings with third parties the mortgagor may be treated as the owner of the mortgaged premises, he is not so considered when the rights of the mortgagee are concerned. As between the mortgagor and mortgagee "by the legal, formal mortgage  *   *   *   *   * the property is conveyed or assigned by the mortgagor to the mortgagee, in form like that of an absolute conveyance, but subject to a proviso or condition  *   *   *   *   and upon non-performance of this condition, the mortgagee's conditional estate becomes absolute at law, and he may take possession thereof, but it remains redeemable in equity during a certain period." *Duval* v. *Becker,* 81 Md. 546; *Bank of Com.* v. *Lanahan, Trustee,* 45 Md. 407. It is obvious, then, from this relation that it is no more within the power of the mortgagor to impair the value of the mortgagee's security by cutting out from the lien of the mortgage and transferring to a third party, discharged of that lien, a growing crop, which if unsevered will pass with the land at a foreclosure sale, than it is lawful for him to strip the mortgaged property of its appurtenant easements, as was unsuccessfully attempted in *Duval* v. *Becker.* So long

as the crop remains physically unsevered it partakes of the nature of the realty as between the mortgagor and mortgagee. It forms part of the latter's security for the payment of the debt, and all persons dealing with the mortgagor in respect to it whilst it remains actually attached to the freehold deal subject to all the rights of the mortgagee unimpaired and unaffected. *Martin* v. *Martin*, 7 Md. 377. This must in the very nature of things be so. If the mortgagor may by the execution of a bill of sale constructively sever a growing crop planted after the date of a mortgage then in default, and by that act can prevent the purchaser from taking the crop when he buys, at foreclosure sale, the mortgaged property with the crop still growing thereon; then the mortgagor has it in his power to lessen the security held by the mortgagee, and subsequent judgment creditors of the mortgagor could, by seizing the crop and selling it under execution, produce precisely the same result. But this latter cannot be done if there has been no actual severance before a foreclosure sale. *Batterman* v. *Albright, supra*; s. c., 11 L. R. A. 800 and cases in note.

So comprehensive is the rule as to growing crops passing to the purchaser of the land, that even the crops planted by a tenant of the mortgagor after the date of the mortgage pass to the purchaser of the realty upon a foreclosure of the mortgage whilst the crops are still standing. 8 *Am. & Eng. Ency. Law* (2nd ed.) 307 and cases in note.

It will be observed that we are dealing only with the question whether a mortgagor may by a bill of sale constructively sever a growing crop so as to prevent it from passing to a purchaser under a foreclosure sale when the sale of the land is made before the crop is actually cut therefrom. That he may effectually part with the title to a growing crop so as to preclude a subsequent mortgage from attaching to it may be conceded without affecting the decision of this case. We only mean, however, to hold that, owing to the relation existing between mortgagor and mortgagee in Maryland, the former cannot, before an actual severance of

a growing crop, defeat by the execution of a bill of sale, the right of the mortgagee of the land to sell the crop on a foreclosure, or of the purchaser at such a sale to claim the crop. There is no hardship in this. If the mortgagor goes on and makes preparations for a crop, he does it with a full knowledge that the land with the crop is subject to be sold, if the sale takes place before he severs it. Nor does he lose anything by this ; for the crop on the land enhances the price. If by this increase the debt be overpaid, he gets the surplus ; if not, still the full value of his labor goes (as he had agreed it should go) to the payment of the debt secured by the mortgage. *Crews* v. *Pendleton, supra.*

In 1 *Jones on Mortgs.*, sec. 697, it is said : " But growing crops are personal property when severed from the land, and a sale or mortgage of them by the mortagor amounts to a severance." Several New York cases are cited to support this proposition, and among them is *Sexton* v. *Breese*, 135 N. Y. 387. The case not only does not go the length of the text, but sustains the conclusion we have reached. The facts were these : The owner of a farm, upon which was a mortgage, sold to a third party a crop of wheat growing thereon, the bill of sale giving to the purchaser the right to secure and harvest the crop. Subsequently the owner of the farm, the mortgagor, executed to the mortgagee a written instrument authorizing the mortgagee to take possession of the farm, rent the same and apply the proceeds on the mortgage. The person who purchased from the mortgagor, under the bill of sale, the growing wheat crop went upon the farm to cut the wheat, but was prevented from doing so by the mortgagee who harvested it; but the purchaser entered and carried it away. In an action of replevin by the mortgagee against the purchaser under the bill of sale it was held that the latter was entitled to the crop. There had been no sale under the mortgage. The Court, in the course of its judgment, said: " Probably the right of a third person to the growing crops of grain, under a contract of purchase with the owner

would be annulled by the sale upon the foreclosure of a mortgage of the land according to the decisions in *Shepard* v. *Philbrick*, 2 Den. 174, and *Lane* v. *King*, 8 Wend. 584, for then the transfer of the title to the mortgaged premises would carry with it to the purchaser a paramount title to the growing crop.  But in the present case that proposition is not before us and the title of the mortgagor to the mortgaged land was not divested or transferred to the mortgagee with the possession."

Without further elaboration, we think it perfectly clear, both upon reason and the weight of authority, that one who purchases under a bill of sale, or otherwise, a growing crop from a mortgagor, takes the risk of being deprived of the crop, if the mortgage should be foreclosed and the land should be sold under the mortgage before the crop has matured and been actually severed from the soil. The crop in the case at bar being unsevered at the time of sale and being then actually affixed to the freehold the purchaser of the land became, upon the ratification of the sale, entitled to the growing crop. This is the view which the Circuit Court took, and its judgment denying to the appellant the right to the possession of the wheat and straw under his bill of sale, must be affirmed.

> *Judgment affirmed with costs above*
> *and below.*

(Decided November 24th, 1899).