Gillett *v.* Balcom.

---

ONTARIO GENERAL TERM, May, 1849. *Maynard, Welles, and Johnson,* Justices.

## GILLETT and others *vs.* BALCOM.

A mortgage upon real estate binds not only the land, but the crops thereon, while growing, and until they are severed therefrom.

And a person purchasing the mortgaged premises at a sale under a statute foreclosure of the mortgage is entitled to the crops growing thereon, in preference to a person bidding the same off at a sale subsequently made, under a decree in bankruptcy against the mortgagor, by the assignee in bankruptcy.

Gillett *v.* Balcom.

Where a debt, secured by a mortgage, is payable on demand, it is due immodi-
ately, and the mortgagee has a right to foreclose at any time; without making
any previous demand.

The commencement of a suit upon the bond, or of proceedings in chancery or
under the statute, to foreclose the mortgage, is, in such a case, a sufficient
demand.

TROVER for a quantity of wheat, tried at the Steuben circuit
in November, 1846, before H. GRAY, circuit judge. On the
trial the following facts appeared : On the 24th of December,
1842, Uri Balcom presented his petition in bankruptcy to the
district court of the United States for the northern district of
New-York, accompanied by the usual schedules, and on the
9th of February following, was duly declared a bankrupt. The
wheat in question was then growing on the premises of the
bankrupt and was owned by him. The assignee in bank-
ruptcy sold the wheat, which was bid off and purchased by
the plaintiffs at such sale, in April or May, 1843. The defend-
ant afterwards harvested the wheat, and took and converted the
same to his own use. It also appeared that on the 10th of Sep-
tember, 1842, the said Uri Balcom mortgaged to the defendant
certain premises, including the land on which the wheat in
question grew, to secure the sum of 1600 dollars payable *on de-
mand*. The mortgage contained the usual power of sale in
case of default of payment. Also a regular foreclosure of this
mortgage by advertisement and sale under the statute, at which
sale the defendant became the purchaser of the mortgaged prem-
ises for the sum of $500. The sale under the foreclosure took
place on the 29th day of April, 1843. The mortgagor gave up
possession of the mortgaged premises to the defendant, between
the 1st and 10th of April, 1843, and before the sale of the wheat
by the assignee in bankruptcy. There was no proof that pay-
ment of the money secured by the mortgage had been demand-
ed of the mortgagor before the foreclosure, or at any other time;
and the plaintiffs' counsel contended, at the trial, that the money
was not due until demanded, and that therefore the mortgage
had not become forfeited, and the foreclosure was invalid and
ineffectual. He also contended that the mortgage was not due

and had not become forfeited at the time the wheat was sown, and therefore the wheat, at the time, belonged to Uri Balcom, and that the plaintiffs had acquired his right to it. The circuit judge nonsuited the plaintiffs, who excepted to his decision, and now moved to set aside the nonsuit, and for a new trial.

*W. Barnes*, for plaintiffs.

*E. Howell*, for defendant.

*By the Court*, WELLES, J. Under the decree, declaring Uri Balcom a bankrupt, which bears date Feb. 9, 1843, and the 3d section of the bankrupt act of August 19, 1841, the title to the wheat in question, as well as to the land on which it was growing, vested in the assignee in bankruptcy. Such title, however, came to the assignee charged with the incumbrance of the mortgage to the defendant, which held, not only the land, but the crops thereon, while growing, and until they were severed therefrom. (*Shepard* v. *Philbrick*, 2 *Denio*, 174, *and authorities there cited.*)

The mortgage was regularly foreclosed under the statute, and the mortgaged premises sold under the foreclosure to the defendant, before the sale by the assignee in bankruptcy, and the mortgagor, before the sale by the assignee to the plaintiffs, surrendered possession to the defendant. The plaintiffs' counsel, however, insists that as the money, to secure the payment of which the mortgage was given, was payable on demand, and that as no demand was proved, the money was not due, and the mortgage not forfeited, and that therefore the foreclosure was of no avail to vest the title in the defendant.

It has been long settled, that where a note is payable on demand, no other demand need be made except by bringing a suit thereon. (*Story on Prom. Notes,* § 29, *and authorities there cited.* 3 *Wend.* 21, *per Savage, Ch. J.*) The rule is founded upon the assumption that the debt, in such a case, is due, generally, as soon as the note is given, and that by the contract between the parties, a demand is not made a condition to the

maker's liability; and that the commencement of the suit is a sufficient demand in a case where a party has agreed to pay his own debt on demand.

I am not able to discover why the same rule should not apply to a debt secured by a mortgage, payable on demand. In this case the debt was due generally, and the mortgagee had the right to foreclose at any time. The foreclosure under the statute was, in my opinion, equivalent, as far as this point is concerned, to a suit on the bond, or to a foreclosure in chancery.

In *Nelson* v. *Bostwick*, (5 *Hill*, 39,) Bronson, J. says, "Where a party agrees to pay his own debt on request, it is regarded as an undertaking to pay generally, and no special request need be alledged. But it is otherwise where he undertakes, for collateral matter or as surety for a third person. There, if the agreement be that he will pay on request, the request is parcel of the contract, and must be specially alledged and proved."

The rule would probably be the same in a case where the debt was payable in property, or otherwise than in money, upon request or on demand; and would require the plaintiff to aver and prove the request or demand.

My opinion is that the nonsuit was proper and should not be set aside.

Motion denied.

