ANNE J. HELLER and Others, as Successor Trustees for the Benefit of the Holders of Mortgage Investments Issued and Guaranteed by WESTCHESTER TITLE & TRUST COMPANY, under Series 18-F, Appellants, v. AMAWALK NURSERY, INC., and Others, Defendants, Impleaded with J. CLIFFORD McCHRISTIE, as Trustee of the Estate of AMAWALK NURSERY, INC., Bankrupt, and THE COUNTY TRUST COMPANY (Formerly Known as the CALEB HEATHCOTE TRUST COMPANY OF SCARSDALE), Respondents.

ANNE J. HELLER and Others, as Successor Trustees for the Benefit of the Holders of Mortgage Investments Issued and Guaranteed by LAWYERS WESTCHESTER MORTGAGE & TITLE COMPANY, under Issue No. 2-7855, Appellants, v. AMAWALK NURSERY, INC., and Others, Defendants, Impleaded with J. CLIFFORD McCHRISTIE, as Trustee in Bankruptcy of the Estate of AMAWALK NURSERY, INC., Bankrupt, and THE COUNTY TRUST COMPANY (Formerly Known as the CALEB HEATHCOTE TRUST COMPANY OF SCARSDALE), Respondents.

Second Department, February 21, 1938.

*Alfred M. Bailey [William T. Gallagher* with him on the brief], for the appellants.

*Benjamin Pepper [Arthur F. Driscoll* and *Lewis H.: Saper* with him on the brief], for the respondents.

CLOSE, J.   The principal question involved in these appeals is whether nursery stock, consisting of large trees, some as old as forty years, is subject to the lien of mortgages on the real estate. The actions are brought to foreclose two mortgages, one a consolidated mortgage of $160,000, covering 673 acres of land, made by defendant Amawalk Nursery, Inc., to Westchester Title & Trust Company; the other a mortgage of $85,000, covering 267 acres of adjoining land, made by the same owner to the Lawyers Westchester Mortgage & Title Company.   The mortgages are in default, the owner is bankrupt and the contest is between the trustees of the mortgages and other creditors of the owner.

In May, 1933, when the mortgages were already in default, a creditors' committee of three, representing the owner, the mortgagees and the unsecured creditors, took charge of and operated the nursery until October, 1934.   An attempt was then made to reorganize the owner corporation under section 77B* of the Bankruptcy Act, and a temporary receiver was appointed and assumed control of the business.   While that proceeding was pending these foreclosure actions were commenced and the State court appointed a receiver, who apparently never took possession of the property. During the same month the reorganization proceeding was dismissed.   A voluntary petition in bankruptcy was immediately filed and the temporary receiver was elected trustee of the bankrupt estate.   He continued thereafter to operate the nursery and to sell trees, but was evidently apprehensive that whatever rights he possessed would be cut off in the foreclosure actions.   He accordingly sought permission from the referee in bankruptcy to dispose of all the remaining nursery stock, but this attempt was frustrated by a determination of the Federal court that the State court had prior jurisdiction because of the pendency of the foreclosure actions prior to the institution of the bankruptcy proceeding.

---

* See U. S. Code, tit. 11, § 207.— [REP.

The respondents thereupon moved in the present actions for permission to sell the remaining nursery trees and for a stay of all proceedings until such sale had been effected. The actions were then on the trial calendar, and the motion was referred, with the consent of the parties, to the official referee before whom the actions were to be tried. Upon the argument of the motion, at the opening of the trial, the parties agreed to litigate the questions of whether the nursery stock was subject to the lien of the mortgages and whether the mortgagor or his privies retained the power to remove and dispose of the stock prior to foreclosure sale. In this manner the main issue was presented for determination. The learned official referee decided in favor of the respondents, holding, in effect, that nursery trees are governed by the same rules of law as emblements and that the mortgagor or his successor in interest is entitled to remove them at any time until the foreclosure sale. It was also held expressly that the right of the mortgagor's trustee in bankruptcy to remove the nursery stock would terminate with the foreclosure sale; but upon the respondents' application there was embodied in the judgment a stay of the sale until June 1, 1938, thus affording to the trustee in bankruptcy an opportunity to dispose of the trees before the foreclosure sale could be held.

Since the official referee based his decision on the rule with respect to emblements, it will be helpful to discuss the nature of that rule. Emblements are defined in *Hamilton* v. *Austin* (36 Hun, 138; affd., 107 N. Y. 636) as " the annual product or fruit of things sown or planted." In this State the rights of the mortgagor and mortgagee of land on which emblements are grown have been declared as follows: The mortgagor or one deriving title from him may remove the crop at any time prior to foreclosure sale, but upon the sale the crop passes with the land to the purchaser. (*Lane* v. *King*, 8 Wend. 584; *Shepard* v. *Philbrick*, 2 Den. 174; *Sexton* v. *Breese*, 135 N. Y. 387.)

The rule is a peculiar one, and its unusual characteristics were the subject of comment in *Sexton* v. *Breese* (*supra*) and in *Batterman* v. *Albright* (122 N. Y. 484). The peculiarity arises out of the fact that a growing crop possesses some of the features both of realty and of personalty. The meaning of the rule seems to be that the crop is regarded primarily as a part of the realty, subject, however, to a right in the mortgagor or his privies to deal with it as personalty until title passes on foreclosure. This unique right, retained by the mortgagor, appears to have had its origin in " considerations deemed beneficial to the interests of agriculture." (*Batterman* v. *Albright*, *supra*, at p. 490.) The official referee

held that the nursery trees involved in these actions should be governed by the same principle.

Distinctions suggest themselves, however, between growing crops and trees cultivated in a nursery. The encouragement of agriculture, in which the rule with respect to emblements is said to have originated, has little relationship to the cultivation of nursery trees, which is more of an industrial than an agricultural pursuit. Moreover, nursery trees (particularly those grown in a " big tree nursery," with which we are now dealing) have a greater degree of permanency in the land than a crop which is harvested at the end of each growing season; and such trees are, therefore, more clearly a part of the realty, and have less of the characteristics of personal property than a growing crop or emblement. In several cases in other jurisdictions it has been held that trees cultivated in a nursery are a part of the realty. (*Maples* v. *Millon*, 31 Conn. 598; *Price* v. *Brayton*, 19 Iowa, 309; *Adams* v. *Beadle & Slee*, 47 id. 439; *Du Bois* v. *Bowles*, 30 Col. 44; 69 P. 1067.) That seems to be the correct view.

But the conclusion that the trees are a part of the realty does not alone answer the question. It could not be contended that upon the making of the mortgages the owner of the land lost the right to conduct its business by selling and removing trees when buyers appeared. Sales were openly made for a number of years without any claim by the mortgagees that the owner was exceeding its rights in any way. The appellants contend, however, that the right of the mortgagor terminates when default occurs under the mortgages, or, at the latest, upon the commencement of foreclosure and the appointment of a receiver. The respondents, relying upon the emblement doctrine, conceded that such right could not continue after the foreclosure sale. The determination of these appeals depends upon where the line is to be drawn.

In our opinion, the rule with respect to standing timber furnishes a better guide than the doctrine of emblements. The owner of land may remove growing timber so long as the security of the mortgage remains adequate, but such removal after default is actionable waste for which the mortgagee may recover if his security is thereby impaired. (*Van Pelt* v. *McGraw*, 4 N. Y. 110; *Cottle* v. *Wright*, 140 Misc. 373.) There is no real distinction between the cutting of trees for lumber and the removal of trees from a nursery for transplantation elsewhere. In fact, the removal of nursery trees is more objectionable to the mortgagee than the cutting of trees for lumber, because the nursery trees cannot be transplanted without removing the section of earth in which they grow. On no theory can this removal of portions of the land be

justified. If we follow the rule with respect to growing timber, we are faced with the question whether the security of the mortgages will be impaired by the removal of the nursery stock at this time. The answer must be in the affirmative, since the proof shows that the nursery stock is worth many times the combined amount of the mortgages, and that the land itself will be despoiled in the process of removal. The effect of the removal is waste.

There are two New York decisions which deal with the question at issue. The first is *Hamilton* v. *Austin* (36 Hun, 138; affd., 107 N. Y. 636). This was a decision of the General Term, Fourth Department, affirmed without opinion by the Court of Appeals. The plaintiff had foreclosed a mortgage on nursery land. After the sale, at which the plaintiff became the purchaser, the plaintiff sued the mortgagor for waste in removing trees prior to and during the pendency of the foreclosure action. The plaintiff had judgment for the value of the trees removed. On appeal, the General Term reversed the judgment and granted a new trial, holding in effect that the mortgagee should not have recovered for the trees removed prior to default, but that the damages accruing after default were recoverable. This case strongly supports the theory of the appellants, because it deals directly with the right of the mortgagee in the nursery stock prior to foreclosure sale. It holds that the owner's privilege of removing the trees terminates on default, or at least no later than the commencement of the foreclosure action.

The second case is *Batterman* v. *Albright* (122 N. Y. 484). That case also involved nursery lands. The plaintiff claimed the trees as a purchaser at an execution sale. The defendant had foreclosed a mortgage on the land and purchased at the foreclosure sale. The defendant went into possession and was sued by the plaintiff for conversion. It will be noted that the case did not involve any question of the rights of the parties prior to the sale in foreclosure, but dealt only with their respective claims *after* the sale. It was held that the defendant, as the purchaser of the land at the foreclosure sale, had title to the nursery stock. The result reached is in no way contrary to *Hamilton* v. *Austin* (*supra*), or to the claims of the plaintiffs in these actions, since the decision was in favor of the mortgagee. Difficulty is caused, however, by some of the language of the opinion.

In the first place, there is some discussion of nursery trees as emblements, and some language which might be taken to mean that the trees are subject to the same rule as emblements. If that were actually the holding in the case, it would follow that the mortgagee could acquire no right to the trees prior to foreclosure sale, and the case would in that respect be contrary to *Hamilton* v. *Austin*.

But the opinion should not be so construed. At the outset of its discussion the court said this (p. 488): "The rule, as between mortgagor and mortgagee as to crops growing on mortgaged premises, is no less favorable to the claim of the plaintiff than that relating to nursery trees, which partake of the same character. And the principle applicable to both in such case may be treated as the same." This means that the court invoked the emblement doctrine simply because that doctrine was the most favorable to the plaintiff. It then proceeded to demonstrate that even if that rule were applied the plaintiff could not succeed as against one deriving title through the mortgagee. The reasoning is hypothetical and does not mean that the emblement doctrine must necessarily be applied.

The second difficulty is occasioned by the following language in the opinion (p. 489): "And while the plaintiff, as against the mortgagor and without liability to the mortgagee, may have taken the nursery trees from the premises prior to the time of the foreclosure of the mortgage, he had no such right, as against the purchaser or his grantee who had entered under the title perfected by the sale on foreclosure and the conveyance made pursuant to it." This seems to mean that the foreclosure sale is the point where the mortgagor's right ends and the right of the mortgagee begins. There is some room for doubt on that score, because it is said that the mortgagor might take the trees "prior to the time of the foreclosure of the mortgage," and that might refer to the commencement of the action rather than the sale. But, assuming it means the sale, it will be noted that anything said about the rights of the parties prior to the sale was mere *dictum*. There was no such question before the court. The sale had taken place and the issue related only to the rights of the parties thereafter.

The learned official referee was of the opinion that the two cases could not be reconciled, and he chose to follow *Batterman* v. *Albright*, because that case had been decided by the Court of Appeals, whereas in *Hamilton* v. *Austin* that court had merely affirmed without opinion. Our view is that *Batterman* v. *Albright* is not contrary to *Hamilton* v. *Austin* with respect to the issue actually presented and decided, and that the *Batterman* case did not hold, and was not intended to hold, that nursery trees are subject to the emblement doctrine.

It is, therefore, our conclusion that the right of the mortgagor or its successor in interest to remove the nursery trees terminated either upon default or at the time when the receiver was appointed in the foreclosure actions. It is unnecessary now to make a choice between the two points, since in either event it must follow in the

present cases that the rights of the mortgagees to the nursery stock are paramount to the claims of the general creditors and the trustee in bankruptcy. Having reached the conclusion that the nursery stock is a part of the realty, it is unnecessary to consider the effect of the personal property clause in the mortgage held by the Westchester Title & Trust Company. The same conclusion furnishes an answer to the contention of the respondents that the mortgages are void as to the nursery trees because the mortgagees failed to give the notice to creditors required by section 230-a of the Lien Law in the case of chattel mortgages upon stocks of merchandise in bulk.

Apart from the views expressed above, we are of the opinion that there was no basis for the stay of the foreclosure sale, contained in the judgment. If the emblement doctrine were to be applied, the mortgagees should at least have the benefit of the right accorded by that rule to stay the hand of the mortgagor or its successors by a prompt sale in the ordinary course of foreclosure.

The judgment in each action should be modified by striking out the decretal paragraphs adjudging that the nursery stock is not subject to the liens of the mortgages and the paragraph directing a stay of the foreclosure sale, and by substituting therefor a decretal paragraph adjudging that the nursery stock is subject to the mortgage liens, and as so modified affirmed, in so far as an appeal is taken therefrom, without costs. Findings of fact and conclusions of law inconsistent herewith should be reversed and new findings and conclusions made.

HAGARTY, JOHNSTON and ADEL, JJ., concur; TAYLOR, J., dissents in part, with opinion.

TAYLOR, J. (dissenting in part). I agree with the majority that there should be struck from the judgments appealed from the provision in respondents' favor for a stay of proceedings. Such stay is unwarranted in view of the undoubted right of the mortgagees, because of impressive defaults, to resort to the mortgaged real estate. Even pending appeal, such stay would be in order only upon security given. (Civ. Prac. Act, § 598.)

Upon the main question as to the rights of the appellants, mortgagees, in the nursery stock, I am of opinion that until the delivery to them of the referee's deed in this foreclosure, if they shall become purchasers at the sale, the mortgagees have and will have no rights in that stock, which is, and during that period will be, removable from the mortgaged premises for purposes of sale by the trustee in bankruptcy, in whom the mortgagor-owner's interest in that stock is vested. It will be thus removable for such pur-

poses until, but not after, the delivery of the referee's deed. (*Vide Hamilton* v. *Austin*, 36 Hun, 138; affd. without opinion, 107 N. Y. 636; and *Batterman* v. *Albright*, 122 id. 484.)

Trees grown for sale in a nursery, whatever their size or age, are in a legal category which is similar to that in which are emblements. (Cases *supra*.) From this it follows that the mortgagor-owner may remove them from the premises for the purposes of sale, without let or hindrance by the mortgagees, until the delivery of the referee's deed; they are not fixtures which are irremovable from the realty. (Cases *supra*.) No such right of removal will exist after the delivery of the referee's deed. (Cases *supra*.)

In so far as there may be conflict in the rulings announced in the *Hamilton* case, in which no opinion was written by the highest court, and in the *Batterman* case, in which an opinion was written, the latter must be deemed controlling, at least in an advisory way, notwithstanding the fact, to which the prevailing opinion refers, that certain suggestions in the opinion of the Court of Appeals in the *Batterman* case, as to the respective rights of mortgagor and mortgagee before foreclosure, constitute *obiter dicta*. The doctrine of that case, however, it seems to me, warrants my conclusion above indicated.

It is noted that a receiver of the mortgaged premises herein was appointed. He never took possession of the mortgaged premises or of the nursery stock. In view of the nature and legal attributes of that stock, he was well advised when he omitted to take possession of it, because of lack of right in the mortgagees to resort to it for the satisfaction of the mortgage debts during the pendency of the foreclosure and prior to the delivery of the referee's deed, during which period the mortgagor-owner, without tenants, had a right to absolute possession. (*Vide Holmes* v. *Gravenhorst*, 263 N. Y. 148.)

There are rulings in other jurisdictions, cited in the prevailing opinion, to the effect that trees cultivated in a nursery for sale purposes constitute a part of the realty. Those rulings, unqualified, are not in accord with our judicial policy. While attached to the soil, that stock is undoubtedly a part of the realty; but this statement is subject to the qualification that until the delivery of a deed in foreclosure it has, as of necessity it must have, the attributes of personalty, removable by the mortgagor-owner for purposes of sale. (*Vide Duffus* v. *Bangs*, 43 Hun, 52; affd., 122 N. Y. 423.)

Certain authorities in still other jurisdictions (*Matter of Pennsylvania Nursery Co.*, 7 F. Supp. 726; *Matter of Buchanan*, 24 F. [2d] 553) are more in accord with our policy as I think it is inferable from *Hamilton* v. *Austin* (*supra*) and *Batterman* v. *Albright* (*supra*).

The law is unsettled but undoubtedly will be clarified and settled

when and if the opinion of our highest court is invoked in these cases.

The judgments should be modified by striking therefrom the provisions for a stay of the foreclosure sale and in such other respects as will conform to the views expressed in this dissent, and as thus modified they should be affirmed in so far as appeals are taken therefrom, without costs.

Judgment in each action modified by striking out the decretal paragraphs adjudging that the nursery stock is· not subject to the liens of the mortgages and the paragraph directing a stay of the foreclosure sale, and by substituting therefor a decretal paragraph adjudging that the nursery stock is subject to the mortgage liens. As so modified, the judgment in each action, in so far as an appeal is taken therefrom, is affirmed, without costs. Findings of fact and conclusions of law inconsistent herewith are reversed and new findings and conclusions will be made. Settle orders on notice.